UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN J. URBANEC, ET AL,

    Plaintiffs,

v.

MULTI-FINANCIAL SECURITIES CORP.,
ET AL,

    Defendants.
                                       /

Case No. 10-12869

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT MULTI-FINANCIAL SECURITIES CORPORATION'S MOTION TO DISMISS [14]**

      This dispute arises out of Plaintiffs' investment of $50,000 in the American Charitable Program, an investment Plaintiffs allege was recommended to them by Defendant Multi-Financial Securities Corporation ("Multi-Financial")'s agent John Tryon in March of 1995 but was not discovered to be a Ponzi scheme until April 2009 when its records were seized by federal investigators. Defendant's motion argues that Plaintiffs' claims against it must be dismissed because (1) Plaintiffs' negligent supervision claim (Claim XII) is barred under Michigan's three year statute of limitations for negligence actions; (2) Plaintiffs have not and cannot state a claim for negligent infliction of emotional distress (Count XV); and (3) the doctrine of respondeat superior (Count IX) is a theory of vicarious liability that does not save Plaintiffs' claims based on Defendant Tryon's misconduct that allegedly occurred within the scope of his authority as Multi-Financial's agent because those claims allege wrongs that occurred more than six years before Plaintiffs' complaint was filed and are thus

time-barred. For the reasons stated below, Defendant Multi-Financial's motion to dismiss is GRANTED, and all claims asserted in Plaintiffs' complaint against Defendant Multi-Financial are DISMISSED WITH PREJUDICE.

I. **Facts**

Plaintiffs filed a complaint against multiple Defendants in state court asserting multiple claims arising out of their investment in an alleged Ponzi scheme. Because Plaintiffs alleged a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961, *et seq.*, against some Defendants (but not Multi-Financial) along with their state-law claims, the matter was removed to this Court. There are only three claims asserted against Defendant Multi-Financial: (1) negligent supervision of Defendant Tryon; (2) negligent infliction of emotional distress; and (3) respondeat superior.

Defendant Multi-Financial is a Colorado corporation and the successor by merger to Vestax Securities Corporation. (Compl. ¶ 10.) Defendant Tryon was an authorized agent and registered representative of Vestax. (*Id.* at ¶¶ 10, 24.)

Plaintiffs Stephen and Cecilia Urbanec met Defendant Tryon in 1992. He held himself out as an investment advisor with broad experience and expertise in advising investors regarding suitable investments, retirement planning, and estate planning. (*Id.* at ¶ 15-16.)

In 1992, Defendant Tryon recommended that Plaintiffs create a living trust as a method of estate and retirement planning. He assisted Plaintiffs in creating the Urbanec Family Living Trust and arranged for the transfer of Plaintiffs' assets into the Trust. (*Id.* at ¶ 20.)

From 1992 through 2010, Defendant Tryon was an employee and authorized agent of Defendant Estate Planning Group, Inc., which is owned and controlled by Defendants

David White and Richard Johnson. (*Id.* at ¶¶ 17-19.) From 1992 to the present, Defendant Tryon has been a registered and authorized representative of Defendant Western Reserve Life Assurance Co. of Ohio ("WRL"); and in 1995, Plaintiffs followed Defendant Tryon's recommendation and invested $79,000 in WRL investment products. (*Id.* at ¶ 21.) Plaintiffs' complaint does not assert any claims regarding the sale or performance of their investment in WRL products. Plaintiffs received regular account statements from Defendant Tryon regarding the WRL annuity. (*Id.*, Appx. A.)

From 1995 and continuing, Defendant Tryon was also an authorized agent and representative of Vestax Securities Corporation, predecessor to Defendant Multi-Financial. (*Id.* at ¶ 24.) In March 1999, Defendant Tryon became an authorized agent and representative of Defendant Leonard & Co. (*Id.* at ¶ 25.) By December 2005, Defendant Tryon had become an authorized agent and representative of Defendant Cenaurus Financial, Inc. (*Id.* at ¶ 26.) Plaintiffs allege that, because Defendant Tryon was an authorized agent for Vestax, Centaurus, and Leonard, they gained confidence in his financial advice. (*Id.* at ¶ 27.)

In February 1995, while Defendant Tryon was an authorized agent of Defendant Multi-Financing but before he became an authorized agent for Defendants Leonard and Centaurus, he recommended that Plaintiffs invest in the "American Charitable Program," a pooled life insurance investment fund that he was promoting as a sound, safe investment with a higher rate of return and significant tax advantages. The American Charitable Program was a Ponzi scheme operated by Defendant Richard Johnson. (*Id.* at ¶¶ 28-29, 118-121.) Plaintiffs allege that Defendant Tryon failed to disclose that Defendants Richard Johnson and David White were business partners and co-owners of Defendant Estate

3

Planning Group, Inc. -- the company that employed Defendant Tryon. Plaintiffs also complain that Defendant Tryon failed to disclose that all three Defendants shared the same office suite in Bloomfield Hills, Michigan. (*Id.* at ¶ 30.)

In reliance on Defendant Tryon's recommendation, Plaintiffs invested $50,000 in the American Charitable Program in March 1995 on behalf of the Urbanec Family Living Trust. (*Id.* at ¶ 32.) Plaintiffs made only two withdrawals. In February 2004, Plaintiffs withdrew $10,000. They withdrew another $10,000 in March 2005. (*Id.* at ¶ 35.)

The American Charitable Program, a purported pooled life insurance investment fund benefitting non-profit charitable organizations was operated by Defendant Richard Johnson. Johnson was not affiliated with Defendant Multi-Financial. (*Id.* at ¶¶ 28-31.)

After investing in American Charitable Program in 1995, Defendant Richard Johnson sent Plaintiffs periodic account statements through the mail. One such statement showed that, as of December 31, 2008, Plaintiffs' investment in American Charitable Program had a value of $99,000. Plaintiffs relied on these account statements to make investment and withdrawal decisions. (*Id.* at ¶¶ 36, 37.)

In April 2009, Plaintiffs were informed that Defendant Richard Johnson was the subject of a criminal investigation and that both his and American Charitable Program's business records had been seized by the F.B.I. (*Id.* at ¶ 38.) Defendant Richard Johnson has been convicted of mail fraud in the United States District Court for the Eastern District of Michigan in connection with his activities involving the American Charitable Program. (*Id.* at 43.)

Plaintiffs filed this action on June 15, 2010 against Defendant Multi-Financial and numerous other Defendants, including Richard Johnson, John Tryon, David White, Estate

4

Planning Group, Inc., Leonard & Company, Centaurus Financial, Inc., and Western Reserve Life Assurance Co. of Ohio.

As to Defendant Multi-Financial, Plaintiffs allege that (1) Multi-Financial should be held directly liable for the financial, emotional, and psychological injuries caused by Multi-Financial's negligent supervision of Tryon – its actual or ostensible agent -- and specifically, Multi-Financial's failure to ensure that Tryon "provide[d] reasonable and prudent investment advice and investment vehicles to investors such as Plaintiffs;" and (2) Multi-Financial should also be held vicariously liable for its agent Tryon's wrongful conduct in recommending that they invest $50,000 in what turned out to be a fraudulent Ponzi scheme. (Compl., Counts X, XII and XV, ¶¶ 122-123, 128-132, 146-148.) This matter is now before the Court on Defendant Multi-Financial's motion to dismiss each of these claims.

## II. Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id*. at 1949 (internal quotation marks and citation omitted).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 129 S. Ct. at 1949. "The determination that a complaint was filed outside the applicable statute of limitations period is a conclusion of law." *Chandler v. Wackenhut Corp.*, No. 1:08-cv-1197, 2010 WL 307908,

*3 (W.D. Mich. Jan. 19, 2010) (citation omitted). "The application of a legal doctrine, such as the doctrine of equitable tolling, is also a question of law." *Id.* (citation omitted).

## III. Analysis

Defendant's motion argues that Plaintiffs' claims against it must be dismissed because (1) the negligent supervision claims are barred under Michigan's three year statute of limitations; (2) Plaintiffs cannot state a claim of negligent infliction of emotional distress; and (3) Plaintiffs fail to allege facts that would allow Defendant Multi-Financial to be held vicariously liable for Defendant Tryon's alleged fraud in connection with their $50,000 investment in the American Charitable Program. The Court begins its analysis by examining whether Plaintiffs' negligent supervision claim is time-barred.

### A. Plaintiffs' Negligent Supervision Claim is Barred by the Statute of Limitations

Plaintiffs' complaint alleges a negligent supervision claim against Defendant Multi-Financial with regard to its agent's recommendation in February 1995 that they invest $50,000 in American Charitable Program -- a recommendation that they acted on in March 1995. Because Plaintiffs' claim is one of negligence, Michigan's three-year statute of limitation for general tort claims applies. *See* Mich. Comp. Laws Ann. § 600.5805(10).[1]

---

[1] The statute of limitation provides as follows:

> Sec. 5805.(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.
>
> * * *
>
> (10) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

The Michigan courts have observed that this three year statute of limitation applies to negligence claims in the securities context. *See Mumrow v. First of Mich. Corp.*, No. 180237, 1997 WL 33334388, *1 (Mich. Ct. App. Nov. 4, 1997) (holding that the plaintiffs' negligence claim based upon investment advice provided by a securities broker was barred by this three year statute of limitation because the last challenged investment was purchased more than three years before their lawsuit was filed); *Hampton v. Karpen*, No. 183200, 1996 WL 33348846, *2 (Mich. Ct. App. Nov. 12, 1996) (holding that this three year statute of limitations applies to the plaintiff's "tort-based gross negligence claim alleging financial injury"). It also applies to negligent supervision and negligent infliction of emotional distress claims. *See In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 107 F. Supp. 2d 841, 871 (W.D. Mich. 2000) (observing that, under Michigan law, the statute of limitations for a claim of negligent supervision is three years); *Marsh v. Crummel*, No. 204941, 1999 WL 33446752, *1 (Mich. Ct. App. April 23, 1999) (observing that claims for "negligent infliction of emotional distress must be brought within three years after they accrue in order to avoid the limitation bar.").

It is well-established that a statute of limitation does not begin to run until a claim accrues. Michigan law provides that:

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838 [not applicable here], and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

Mich. Comp. Laws Ann. § 600.5827.

---

Mich. Comp. Laws Ann. §§ 600.5805(1), (10).

Defendant Multi-Financial argues that Plaintiff's negligent supervision claim accrued in 1995 because that is when its alleged agent, John Tryon, recommended that Plaintiffs invest in the American Charitable Program, an alleged Ponzi scheme. Plaintiffs, on the other hand, argue that this negligence claim did not accrue at the moment of their investment but rather occurred when the Ponzi scheme collapsed in 2009 and they no longer had an opportunity to recoup the remaining $30,000 of their $50,000 investment. This Court agrees with Defendant Multi-Financial.

"Under Michigan law, to decide which limitation period controls, courts examine the type of conduct at issue and the interest harmed, not the label given to the claim." *Winterhalter v. Watson Wyatt & Co.*, 87 F. App'x 513, 516 (6th Cir. 2004). The wrong upon which Plaintiffs' claim is based, i.e., negligent supervision of Tryon at the time he made his recommendation to Plaintiffs to invest in the American Charitable Program, occurred in 1995. Plaintiffs allege that the American Charitable Program was a Ponzi scheme and thus an unsuitable investment. Taking Plaintiffs' allegations as true, the American Charitable Program was a Ponzi scheme and thus an unsuitable investment when they first invested in it in 1995. It did not become a Ponzi scheme only when it became evident in 2009 that they would not be able to recoup the remaining $30,000 of their initial $50,000 investment. Accordingly, Plaintiffs were harmed by Defendant Multi-Financial's alleged negligent supervision in 1995 when they acted on Tryon's investment recommendation. Their negligent supervision claim thus accrued in 1995. *Cf, First of Mich. Corp. v. Swick*, 894 F. Supp. 298, 300 (E.D. Mich. 1995) (determining that the defendants/investors' claims were untimely and thus not eligible for submission to arbitration because "the gravamen of the claims is that [plaintiff's agent] recommended illiquid and speculative investments which

were inappropriate given the [defendants/investors]' financial objectives" and "[i]f true, the investments were 'unsuitable' when they were made, and did not become so only when they lost value, or when the [defendants/investors] discovered it upon consulting with an attorney."). Despite Plaintiffs' assertions to the contrary, there are no facts showing that Tryon, while acting as Defendant Multi-Financial's agent, sent them account statements that misrepresented the value of their investment in the American Charitable Program. In fact, Appendix A to Plaintiffs' complaint reveals that all American Charitable Program statements were generated by Defendant Richard Johnson, not Defendant Tryon. Rather, Tryon's statements to Plaintiffs addressed their WRL investments on which they have no complaint. (Compl., Appx. A.)

Plaintiffs' negligent supervision claim cannot be saved by Michigan's common law discovery rule. The Michigan Supreme Court, overruling precedent to the contrary, recently held that Michigan's accrual statute, Mich. Comp. Laws Ann. § 600.5827, "alone governs the time of accrual of the plaintiff's claims" even "when a plaintiff could not have reasonably discovered the elements of a cause of action within the limitations period." *Trentadue v. Buckler Auto. Lawn Sprinkler Co.*, 738 N.W.2d 664, 666-67 (Mich. 2007).[2] In *Trentadue*, the Michigan Supreme Court addressed whether a wrongful death and various negligence claims, including negligent hiring and monitoring claims, were barred under Michigan's statutory scheme.

---

[2]This decision has not been appealed. It is, however, the subject of a current appeal pending before the Michigan Supreme Court. Application for leave to appeal was granted in *Colaianni v. Stuart Frankel Devel. Corp.*, 777 N.W.2d 410 (Mich. 2010), requiring the parties to address "whether *Trentadue v. Buckler Automatic Lawn Sprinkler Co.,* 479 Mich. 378, 738 N.W.2d 664 (2007), was correctly decided." *Id.* Oral arguments were heard on October 7, 2010.

The *Trentadue* case arose "from the tragic rape and murder of Margarette F. Eby in November 1986 at her home in Flint." *Id.* at 667. "The rape and murder remained unsolved until 2002, when deoxyribonucleic acid (DNA) evidence established that Jeffrey Gorton, an employee of his parents' corporation, the Buckler Automatic Lawn Sprinkler Company . . . which serviced the sprinkler system on the grounds [where Eby lived], had committed the crime." *Id.* The Michigan Supreme Court reversed the lower court's decision holding that the personal representative plaintiff's personal injury claims were not time barred because she "was unaware of a cause of action against [the defendant sprinkler company and its owners and others] until their relationship with the killer became known." *Id.* at 668. The *Trentadue* Court observed that, under Michigan's Revised Judicature Act, specific statutes "provide[] for tolling of the period of limitations in certain situations," including professional malpractice, medical malpractice, alleged injuries from unsafe property, and in "actions alleging that a person who may be liable for the claim fraudulently concealed the existence of the claim or the identity of any person who is liable for the claim, MCL 600.5855." *Id.* at 670. Finding Michigan's statutory scheme to be "exclusive," the *Trentadue* Court expressly rejected the plaintiff's argument that "a court-created discovery rule" operated to prevent the "harsh result" of applying Michigan's relevant statute of limitations. *Id.* In support, it found that Michigan's tolling statute for fraudulent concealment, Mich. Comp. Laws Ann. § 600.5855, was "a good indication that the Legislature intended the scheme to be comprehensive and exclusive" because, if courts were able to use a common law discovery rule to toll a statute of limitations, § 5855 would be rendered "effectively meaningless." *Id.* at 671. "For, under a general extrastatutory discovery rule, a plaintiff could toll the limitations period simply by claiming that he

reasonably had no knowledge of the tort or the identity of the tortfeasor. He would never need to establish that the claim or tortfeasor had been fraudulently concealed." *Id*. Therefore, the Court held, "the plain language of MCL 600.5827 precludes the use of a broad common-law discovery rule to toll the accrual date of claims to which this statute applies. Here, the wrong was done when Eby was raped and murdered in 1986. . . . Accordingly, plaintiff's claims accrued at the time of Eby's death. The Legislature has evinced its intent that, despite this tragedy, the defendant-appellants may not face the threat of litigation 16 years later, merely because plaintiff alleges she could not reasonably discover the facts underlying their potential negligence until 2002." *Id.* at 680.

Plaintiffs' attempt to save their negligent supervision claim by invoking Michigan's tolling statute for fraudulent concealment also fails. Michigan's fraudulent concealment statute provides that:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Mich. Comp. Laws Ann. § 600.5855. Again, Plaintiffs' claim here against Defendant Multi-Financial is that it was negligent in its supervision of its agent Tryon and thus allowed him to inappropriately recommend that they invest in the American Charitable Program. There is no allegation that Defendant Multi-Financial concealed the existence of this claim or the identity of any person who would be liable on such a claim. "Michigan case law provides that when the basis of the action is some wrong other than fraud, the fraudulent concealment which will work a postponement of the statute must be a concealment

12

produced by affirmative acts or misrepresentations. A mere silence on the part of the defendant is not enough. The plaintiff must show that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery." *Chandler*, 2010 WL 307908 at *4 (internal quotation marks and citations omitted). Contrary to Plaintiffs' assertions here, the account statements they received from Multi-Financial's predecessor Vestax and/or its agent, Defendant Tryon, concerned their WRL investments only. It was Defendant Richard Johnson who affirmatively communicated with Plaintiffs concerning their investment in the American Charitable Program.[3] There is no allegation that Defendant Tryon was an "operator" of the American Charitable Program. Rather, the allegation is that Defendant Richard Johnson was the operator and continued to be its operator until 2009. Moreover, because Johnson was not employed by Defendant Multi-Financial, he cannot be "a person who is or may be" liable for Plaintiffs' negligent supervision claim. *See id.* at *5. Furthermore, Plaintiffs' allegation --

---

[3]In light of this determination, there is no "continuing wrong" that can be attributed to Defendant Multi-Financial or Defendant Tryon with regard to account statements sent by Defendant Johnson. Even if Plaintiffs had alleged some factual basis for finding a continuing wrong in connection with Plaintiffs' negligent supervision claim, the Michigan Supreme Court has determined that there is no continuing wrong doctrine in Michigan. In *Garg v. Macomb County Community Mental Health Services*, 696 N.W.2d 646 (Mich. 2005), the Michigan Supreme Court overruled *Sumner v. Goodyear Tire & Rubber Co.*, 398 N.W.2d 368 (1986), and held that in the context of claims brought under Michigan's Civil Rights Act, "'three years' means three years" and rejected an argument that there is a basis for the Court to "construct such an amendment" because "the Legislature has determined that such claims should not be permitted." *Id.* at 659. *Accord, Marilyn Froling Revocable Living Trust v. Bloomfield Hills Country Club*, 769 N.W.2d 234, 247-48 (Mich. Ct. App. 2009) (adopting the holding in an earlier published Michigan Court of Appeals decision that *Garg* applies "beyond the context of civil rights claims" and completely abrogated "the continuing wrongs doctrine in the jurisprudence of this state."); *Schaendorf v. Consumers Energy Co.*, 739 N.W.2d 402, 409 (Mich. Ct. App. 2007) (citing *Garg* and holding, in a negligence action, that "the continuing-wrongful-acts doctrine is no longer viable with respect to claims arising beyond the period of limitations.").

that Defendant Multi-Financial is liable for negligence because its agent Tryon failed to disclose that Defendants Richard Johnson and David White were business partners and co-owners of Defendant Estate Planning Group, Inc. and that Johnson, White, and Tryon shared the same office suite in Bloomfield Hills, Michigan -- is insufficient to establish fraudulent concealment.  As observed in *Chandler*, "mere silence on the part of the defendant is not enough." *Id.* at *4.  Finally, any fraudulent concealment by Defendant Johnson does not operate to toll the statute of limitations on Plaintiffs' claims against Multi-Financial.  "Michigan courts have consistently rejected the proposition that fraudulent concealment by one may operate to toll the limitations period against another." *Id.* at **5-7 (discussing Michigan decisions addressing this issue and concluding that "Michigan courts have construed the fraudulent concealment statute over the years as applying only to concealment by the 'person who is or may be liable' for the plaintiff's claims.  Michigan courts have not applied the statute to keep alive a plaintiff's claims based on concealment by third-parties.").

### B. Negligent Infliction of Emotional Distress

This Court also finds persuasive Defendant's argument that Plaintiffs cannot state a claim for negligent infliction of emotional distress.  It is well established in Michigan law that "[a] claim for negligent infliction of emotional distress is not predicated simply upon some negligent action that causes the plaintiff to suffer severe emotional distress.  Rather, it is predicated upon the plaintiff's witnessing negligent injury to an immediate[] family member and suffering severe mental distress resulting in actual physical harm." *Estate of Bandemer v. Bandemer*, No. 293033, 2010 WL 3984653, *4 (Mich. Ct. App. Oct. 12, 2010)

(citing cases). The *Bandemer* court recited the necessary elements for a claim of negligent infliction of emotional distress:

> The elements of this claim are (1) a serious injury is threatened or inflicted on a third person, (2) the nature of the injury is such as to cause severe mental disturbance to the plaintiff, (3) the shock results in actual physical harm, (4) the plaintiff is a member of the third person's immediate family, and (5) the plaintiff is present at the time the third person is injured or suffers shock fairly contemporaneously with that injury.

*Id.* In *Bandemer*, the Michigan Court of Appeals rejected an argument that siblings could state a claim for negligent infliction of emotional distress when two brothers failed to follow their mother's wishes regarding the distribution of some of her assets. "Because appellants did not allege that they witnessed appellees inflict injury on a member of appellants' immediate family that caused appellants to suffer severe mental distress resulting in actual physical harm, they failed to state a claim for negligent infliction of emotional distress and the trial court properly dismissed count VI." *Id.* The same reasoning and result apply here.

### C. Respondeat Superior

Finally, Defendant Multi-Financial argues that respondeat superior is a theory of vicarious liability and not a separate cause of action. Defendant further argues that, because Plaintiffs fail to allege facts that would allow Defendant Multi-Financial to be held vicariously liable for any of the claims asserted against Defendant Tryon in connection with their $50,000 investment in the American Charitable Program, all claims asserted against Defendant Multi-Financial must be dismissed. The Court agrees with Defendant.

It is well established in Michigan law that a claim of liability under the theory of respondeat superior is a derivative claim that fails when the plaintiff fails to allege facts that

show the defendant's liability on other claims. *See Mumrow v. First of Mich. Corp.*, No. 180237, 1997 WL 33334388, *3 n.3 (Mich. Ct. App. Nov. 4, 1997). For the reasons stated above, any negligence claim based on a theory of respondeat superior involving Defendant Multi-Financial is time-barred. Likewise, because Plaintiffs fail to allege facts establishing fraudulent concealment on the part of Defendant Multi-Financial with regard to its alleged agent Tryon, Defendant Multi-Financial cannot be held vicariously liable on a theory of respondeat superior in connection with any fraud claims asserted against Defendant Tryon. Under Michigan law, fraud claims are governed by a six-year statute of limitations and the accrual statute addressed above. *See* Mich. Comp. Laws Ann. §§ 600.6813; 600.5827; *Boyle v. Gen. Motors Corp.*, 661 N.W.2d 557, 560 (Mich. 2003) (per curiam); *Mumrow*, 1997 WL 33334388 at *2. Because a common law discovery rule is not recognized under Michigan law and there is no tolling available here for fraudulent concealment, Plaintiffs' claims that Defendant Multi-Financial can be held vicariously liable for it's agent Tryon's fraud must accrue less than six years before Plaintiffs filed this action. There are, however, no facts alleged in Plaintiffs' complaint involving Tryon acting as Defendant Multi-Financial's agent within the scope of their agency relationship that occurred less than six years before Plaintiffs' suit was filed, and thus all claims asserted in Plaintiffs' complaint against Defendant Multi-Financial are time-barred.

## IV. Conclusion

For the above-stated reasons, Defendant Multi-Financial's motion to dismiss is GRANTED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: November 16, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 16, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager